IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| LARRY MENKES AND | : | |
| JACQUELYN MENKES, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | JURY TRIAL DEMAND |
| vs. | : | |
| | : | DOCKET NO.: 2:17-CV-00573 (PBT) |
| 3M COMPANY (f/k/a Minnesota | : | |
| Mining and Manufacturing | : | |
| Company), ANGUS FIRE (a/k/a | : | |
| Angus International), ANSUL | : | |
| (a/k/a Ansul Chemical Company; | : | |
| a/k/a The Ansul Company a/k/a | : | |
| Ansul Fire Protection, BUCKEYE | : | |
| FIRE EQUIPMENT COMPANY, | : | |
| and CHEMGUARD. | : | |
| | : | |
| Defendants. | : | |

_____:

## MOTION ON BEHALF OF DEFENDANT BUCKEYE FIRE PROTECTION COMPANY TO DISMISS THE PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Buckeye Fire Protection Company ("Buckeye") hereby moves before this Court for an Order Dismissing the Plaintiffs' Complaint for failure to state a claim upon which relief may be granted. The Complaint fails to state claims against Buckeye upon which relief can be granted as to all of its Counts, and therefore must be dismissed against Buckeye.

Respectfully submitted,

**TAYLOR COLICCHIO LLP**
100 Canal Pointe Boulevard
Suite 210
Princeton, New Jersey 08540
Attorneys for the Defendant, Buckeye Fire
Protection Company

By: */s Philip M. Colicchio*
Philip M. Colicchio

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LARRY MENKES AND | : | |
| JACQUELYN MENKES, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | JURY TRIAL DEMAND |
| vs. | : | |
| | : | DOCKET NO.: 2:17-CV-00573 (PBT) |
| 3M COMPANY (f/k/a Minnesota | : | |
| Mining and Manufacturing | : | |
| Company), ANGUS FIRE (a/k/a | : | |
| Angus International), ANSUL | : | |
| (a/k/a Ansul Chemical Company; | : | |
| a/k/a The Ansul Company a/k/a | : | |
| Ansul Fire Protection, BUCKEYE | : | |
| FIRE EQUIPMENT COMPANY, | : | |
| and CHEMGUARD. | : | |
| | : | |
| Defendants. | : | |

---

**MEMORANDUM IN SUPPORT OF MOTION ON BEHALF OF DEFENDANT, BUCKEYE FIRE PROTECTION COMPANY, TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

---

**TAYLOR COLICCHIO LLP**
Attorneys at Law
100 Canal Pointe Boulevard, Suite 210
Princeton, NJ 08540
(609) 987-0022
Attorneys for Defendant Buckeye Fire Protection
Company

**Of Counsel**
Philip M. Colicchio, Esq.
**On the Brief**
Michael J. Robinson IV, Esq.
Ellen Nunno Corbo, Esq.

## TABLE OF CONTENTS

**PROCEDURAL HISTORY**…………………………………………………....…....…1

**STATEMENT OF FACTS**…………………………………………………….............1

**LEGAL ARGUMENT**……………………………………………………..........5

    **I.**    **Buckeye is Entitled to Have the Plaintiffs' Claims Against it Dismissed Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, For Failure to State A Claim Upon Which Relief May be Granted**……………....5

    **II.**    **The Plaintiffs Have Failed to State a Facially Plausible Claim Against Buckeye for Any of the Causes of Action Set Forth in the Complaint**…........6

        **A.**    **Count I: Negligence**…………………………………………………6

        **B.**    **Counts II and II: Products Liability - Failure to Warn, and Products Liability - Design Defect**…………………………….......9

    **III.**    **The Plaintiffs' Claims for Punitive Damages Must Be Dismissed**………........13

    **IV.**    **The Plaintiffs' Claims for "Medical Monitoring Damages" Must Be Dismissed**……………………………………………………….……14

**CONCLUSION**……………………………………………………………….......15

## TABLE OF AUTHORITIES

**CASES:**

Ashcroft v. Iqbal, 556 U.S. 662 (2009)…………………………………………………………5

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)…………………………………………...……5

Brantner v. Black & Decker Mfg. Co., 831 F. Supp. 460 (W.D. Pa. 1993)…………………......7

Conti v. Ford Motor Co., 743 F.2d 195 (3d Cir.1984)………………………………………….11

Crain v. Chesapeake Appalachia, L.L.C., No. 3:12-CV-2343, 2013 U.S. Dist. LEXIS 114671 (M.D. Pa. Aug. 14, 2013)……………………………………………………….……12

Dry v. United States, 235 F.3d 1249 (10th Cir. 2000)…………………………………….…..5

Mackowick v. Westinghouse Electric, 525 Pa. 52, 575 A.2d 100 (1990)………………...……9

Overbeck v. Cates, 700 A.2d 970 (Pa.Super.Ct.1997)…………………………………..…9

Schindler v. Sofamor, Inc., 774 A.2d 765 (Pa.Super.Ct.2001)…………………………….....10

Thomas ex rel. Thomas v. Staples, Inc., 2 F. Supp. 3d 647 (E.D. Pa. 2014)…………….….…12

Toro v. Fitness International LLC., 150 A.3d 968 (2016)……………………………………...…6

Van Buskirk ex rel. Van Buskirk v. W. Bend Co., 100 F. Supp. 2d 281 (E.D. Pa. 1999)……....11

Zollars v. Troy-Built, LLC, 2011 WL 7102573 (2011)……………………………………….10

**RULES:**

Federal Rule of Civil Procedure 12(b)(6)……………………………………………...……5

**OTHER AUTHORITIES:**

Restatement (Second) of Torts §388 …………………………………………………..9

Restatement )Second) of Torts §402(A) …………………………………………………...12

**PROCEDURAL HISTORY**

On February 7, 2017, the Plaintiffs, Larry Menkes and Jacquelyn Menkes, his wife (the "Plaintiffs"), filed a Complaint in the within action against various Defendants, including this Defendant, Buckeye Fire Equipment Company ("Buckeye"), seeking the recovery of various types of damages based upon three (3) causes of action: Negligence (Count I);   Defective Product – Failure to Warn (Count II); and, Defect Product – Design Defect (Count III). Complaint, ¶¶ 87-124. The damages sought by the Plaintiffs include compensatory damages, "medical monitoring" damages, economic damages, injunctive relief, and property damages. Complaint, ¶¶ 99-100, 111-112, 122. Buckeye now moves this Court to Dismiss the Plaintiffs' Complaint pursuant to under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted as against Buckeye.

**STATEMENT OF FACTS**

The facts alleged by the Plaintiffs in their Complaint, accepted as true for purposes of this Motion to Dismiss, pertinent to the instant Motion, are as follows:

- Plaintiffs have lived at 741 Clifford Street, Warminster, Pennsylvania since 1987. Complaint, ¶¶ 1-3.
- Buckeye engineered, developed, manufactured, marketed, and sold Aqueous Film Forming Foam ("AFFF"), a firefighting suppressant agent, to the U.S. Navy, U.S. Air Force, and Pennsylvania Air National Guard for use on naval vessels and at military bases, including NASJRB-Willow Grove and Naval Air Warfare Center (f/k/a Naval Air Development Center, Johnsville) (the "Bases"). Complaint, ¶¶ 9, 21, 46.
- The AFFF contained perflourinated compounds ("PFCs"), such as perfluorooctane sulfonate ("PFOS") and perfluorooctanoic acid ("PFOA"), and/or other PFCs that degrade into PFOS and/or PFOA. Complaint, ¶¶ 15-16, 18, 21.

1

- The Plaintiffs allege that PFOS and PFOA have unique properties that cause them to be classified as persistent, bioaccumulative, and toxic. Complaint, ¶ 22.

- The Plaintiffs allege that PFOS and PFOA are environmental hazards that degrade very slowly, and can remain in the environment for decades, leaching through the soil and infiltrating and polluting groundwater and the environment. Complaint, ¶¶ 24-25.

- "Toxicology studies" purportedly "show that PFOS and PFOA are readily absorbed after oral exposure and accumulate primarily in the serum, kidney, and liver." Complaint, ¶ 27.

- "Once ingested, PFOS and PFOA have a half-life within the human body of up to 9 years." Complaint, ¶ 29.

- "PFOS and PFOA exposure is associated with increased risk of various diseases and cancers in humans, including but not limited to: … bladder cancer …."  Complaint, ¶ 32.

- The Defendants "knew or should have known that PFCs are highly soluble in water, and highly mobile and highly persistent in the environment, and highly likely to contaminate water supplies if released into the environment." Complaint, ¶ 34.

- The Defendants knew that large quantities of their products would be used in training exercises and emergency situations at the Bases and civilian firefighting facilities "in such a manner that dangerous chemicals would be released into the environment" and "which would cause the AFFF to drain into the ground and eventually pollute or contaminate the ground water beneath the Bases and eventually migrate into the drinking/potable water of the Plaintiffs."  Complaint, ¶¶ 35, 47.

- "It was reasonably foreseeable to Defendants that Plaintiffs, as users of groundwater that supplied wells near the Bases, would use and consume groundwater contaminated by their products at the Bases and would be harmed as a result." Complaint, ¶ 52.

- The Defendants were "well aware" of the health risks and effects of exposure to products containing PFOS and PFOA in the 1970s and 1980s, but continued to manufacture, market, and/or sell the products without sufficient warnings to "consumers, purchasers and users" of the products, and failed to recall the products when they were taken off the market. Complaint, ¶¶ 53-54.

- "At any given time during their operation, the Bases housed thousands of gallons of AFFF concentrate manufactured by Defendants, which were/are stored in buckets, drums, tankers and sprinkler systems." Complaint, ¶ 56.

- Military personnel and civilian firefighters conducted training exercises, requiring the use of AFFF, at the Bases for decades, including suppressing fires and explosions on the ground, and "coating runways in anticipation of difficult landings, all of which resulted in acres of foam-covered soil." Complaint, ¶¶ 57-61.

- The Bases maintained aircraft hangars protected by ceiling fire suppression units holding hundreds of gallons of AFFF, resulting in occasional accidental discharges of hundreds of gallons of AFFF, that personnel at the Bases cleaned "by washing the foam down drains which leached into the groundwater which provided drinking/potable water to those serving and working on the bases and surrounding residents." Complaint, ¶¶ 60-62.

- The AFFF contaminated and polluted the ground and drinking/potable water, and "military and civilian personnel stationed on the bases were exposed to PFOA and PFOS in their drinking/cooking water, bathing water, etc. while living in areas off the bases and/or while eating, drinking, etc. in restaurants, cafes, homes of friends, etc. in the said areas." Complaint, ¶¶ 63-66.

- "Upon information and belief, instructions and warnings supplied with the AFFF sold by the Defendants did not adequately describe the dangers associated with the use and disposal of AFFF." Complaint, ¶ 68.

- In 2012, the EPA included PFOS and PFOA in its Third Unregulated Containment Monitoring Rule ("UCMR3"), requiring certain water providers across the country to test their water for the presence of PFOA and PFOS. Complaint, ¶ 75.

- "Between November 2013 and June 2014,  the Warminster Public Authority tested its wells in compliance with UCMR3" finding PFOS levels between 40ppt – 1090 ppt, and PFOA levels from 20 ppt – 890 ppt, and closing six of its wells "due to PFOS and/or PFOA contamination." Complaint, ¶ 76.

- "In May 2016, the EPA set its Health Advisory for Lifetime Exposure at 70 ppt for the sum of PFOA and PFOS concentrations in drinking water." Complaint, ¶ 77.

- The only allegation in the Complaint that even remotely tries to specifically identify any actual studies on potential negative health outcomes related to exposure to humans of PFOA or PFOS is that a "Negative health outcomes associated with exposure to PFOA-contaminated drinking water at 50 ppt has been found in a scientific study in and around Parkersburg, West Virginia." Complaint, ¶ 79.

The Complaint ***does not allege*** that either of the Plaintiffs lived or worked on the Bases at any time. The Complaint ***does not allege*** that the Plaintiffs lived, or that their residence is located, within an area adjacent to the Bases, or in any specific geographical proximity to the Bases. The Complaint ***does not allege*** that the Plaintiffs' drinking/potable water supply was within the "Affected Area". The Complaint ***does not allege*** that the Plaintiffs' drinking/potable water supply was serviced by any of the wells tested and/or closed by the Warminster Pubic Authority.  The Complaint ***does not allege*** that the wells tested and/or closed by the Warminster Public Authority were contaminated by groundwater that was purportedly contaminated and polluted by the use of any Buckeye product at the Bases. The Complaint ***does not allege*** that there have been any definitive studies linking PFOS or PFOA to increased risks of the development of bladder cancer.  While the Complaint does allege that PFOS and PFOA are "associated" with the increased risk of various diseases and negative health consequences, the Complaint ***does not allege or cite to*** a single definitive study showing a proven causal link between exposure to PFOS and PFOA and the diseases and negative health consequences described by the Plaintiffs, including bladder cancer. Complaint, ¶¶ 30-32, 75-78, 80, 86.

**LEGAL ARGUMENT**

**POINT I**

**Buckeye is Entitled to Have the Plaintiffs' Claims Against it Dismissed
Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, For
Failure to State A Claim Upon Which Relief May be Granted**

To survive a Fed.R.Civ. P. Rule 12(b)(6) motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To withstand a motion to dismiss, the plaintiffs must establish the "facial plausibility" of their claims by pleading sufficient factual material to permit "the reasonable inference that the defendant is liable for the misconduct alleged." See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). Courts are not required to "accept 'conclusory allegations, unwarranted inferences, or legal conclusions' in a complaint." Dry v. United States, 235 F.3d 1249, 1255 (10th Cir. 2000). Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679. A "naked assertion … without some further factual enhancement [] stops short of the line between possibility and plausibility of 'entitlement to relief.'" Twombly, 550 U.S. at 555 (quotation omitted).

In this case, the Plaintiffs have failed to plead facts sufficient to support any of the causes of action asserted against Buckeye. The Plaintiffs have either failed to allege all of the necessary elements of a cause of action, or have alleged only "conclusory allegations" in support of those claims, or both. As a result, the Plaintiffs fail to state any claims that are facially plausible as against Buckeye. Consequently, Buckeye is entitled to have the Plaintiffs' claims against it dismissed pursuant to Rule 12 (b)(6).

## POINT II

### The Plaintiffs Have Failed to State a Facially Plausible Claim Against Buckeye for Any of the Causes of Action Set Forth in the Complaint

The Plaintiffs have set forth three causes of action against Buckeye in their Complaint. These include claims for: Negligence; Products Liability-Failure to Warn; and, Products Liability-Design Defect. The Plaintiffs have failed to allege the facts necessary to pursue any of these claims against Buckeye, as Buckeye owed no duty of care to the Plaintiffs, Buckeye did not breach any duty of care it may have owed to the Plaintiffs, and no purported defect in Buckeye's products, or purported failure to warn, proximately caused any damage to the Plaintiffs. Consequently, the Complaint must be dismissed as to Buckeye, pursuant to FED.R.CIV.P. 12(b)(6).

### A.   Count I:  Negligence

In Count I of the Complaint, the Plaintiffs claim to be entitled to recover damages against Buckeye based upon a theory of negligence. To state a facially plausible claim for negligence, a plaintiff must allege four elements: " (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." Toro v. Fitness International LLC., 150 A.3d 968 (2016). In this case, the Plaintiffs have not, and cannot, sufficiently allege these elements as against Buckeye.

The Plaintiffs do not, and cannot, allege that they were the consumers or ultimate users of the products at issue in this case. Instead, as the Plaintiffs allege, the products at issue were AFFF-containing products purchased and used by the U.S. Navy, the U.S. Air Force, and the Pennsylvania Air National Guard at Naval Bases. The Plaintiffs do not allege that they ever lived on, or worked on or at, the Bases. The Plaintiffs do not allege that they lived next to the Bases, or

within a certain geographical distance from the Bases. The Plaintiffs do not allege that their drinking/potable water was supplied by the same aquifer or well as the Bases. The Plaintiffs do not even allege that the aquifer or well from which they obtained their drinking/potable water was actually purportedly contaminated with excessive levels of PFOS and/or PFOA, or even was among those tested or closed for purportedly excessive levels of PFOS and/or PFOA.

Consequently, for a start, the Plaintiffs do not, and cannot, allege the existence of any duty owed to them by Buckeye under the circumstances of this case.

> The establishment of the defendant's duty, where it is not based on the existence of an exogenous standard such as a statute or administrative regulation, is determined according to Griggs by a two-part test: (1) whether the risks of injury were foreseeable; and (2) whether the foreseeable risks were unreasonable. 981 F.2d at 1435. See also Mazzagatti v. Everingham, 512 Pa. 266, 516 A.2d 672 (1986). Phrased another way, "the actions of the defendant must be unreasonable, or expose the plaintiff to an elevated risk of foreseeable harm." Mohler v. Jeke, 407 Pa.Super. 478, 595 A.2d 1247, 1252 (1991).

> Brantner v. Black & Decker Mfg. Co., 831 F. Supp. 460, 462 (W.D. Pa. 1993).

In this case, the Plaintiffs do not sufficiently allege facts to support their conclusory allegation that it was reasonably foreseeable that the Plaintiffs would come into contact with Buckeye's products. The Complaint alleges that "It was reasonably foreseeable to Defendants that Plaintiffs, as users of groundwater that supplied the wells near the Bases, would use and consume groundwater contaminated by their products at the Bases and would be harmed as a result." (Complaint, ¶ 52.) But the Plaintiffs never actually allege that they were "users of groundwater that supplied wells near the Bases." They do not allege that they lived or worked on the Bases. They do not allege that they worked or lived within a specific proximity to the Bases. They do not allege facts supporting that such proximity makes it reasonable to assume that any groundwater contamination within that area resulted form activities at the Bases. In short, the

Plaintiffs fail to allege any specific facts explaining how or why they have concluded that they "consume[d] groundwater contaminated by [Buckeye's] products at the Bases."

As the Complaint states, Buckeye manufactured and sold its products to the U.S. Navy, U.S. Air Force, and Pennsylvania Air National Guard, for use at Bases where Plaintiffs did not work or live. As the Complaint acknowledges, Buckeye's products met government-approved Military Specifications issued by the Department of the Navy in 1969. Tellingly, the Complaint does not allege any actual factual support for Plaintiffs' conclusory allegations that one of the ingredients contained within the military-specified products could, after being used and washed away, end up contaminating groundwater, which could then contaminate wells within a certain specified geographical area. Tellingly, the Complaint does not allege that the Plaintiffs' particular water supply was within that specific geographical range, was tested, or was allegedly specifically affected by groundwater purportedly contaminated at the Bases. Consequently, the Plaintiffs have failed to allege facts to support their conclusory allegations that it was reasonably foreseeable that, after Buckeye's sale of its military-specified products to the U.S. military, and after the U.S. military's use of those products, certain ingredients within those government-approved products would be washed into the ground, fail to fully dissipate, leach into groundwater at the Bases, and eventually contaminate water supplies of areas within a still unknown geographic radius, including the as-yet unidentified water supply from which the Plaintiffs used and consumed water, either at home, at work, or someplace else not specified in the Complaint. Based on the facts as alleged by the Plaintiffs in their Complaint, the purported risk of injury from the military's use of Buckeye's products at its Bases, to individuals in the Plaintiffs' position, was not foreseeable and, to the extent that any such risks were foreseeable, they were not reasonable. Consequently, under Pennsylvania law, Buckeye did not owe a legal

duty to the Plaintiffs concerning the purported risk of injury to them that they claim existed as a result of the military's use of Buckeye's products.  For these reasons, Count I of the Plaintiffs' Complaint, based on a theory of Negligence, must be dismissed as against Buckeye.

### B.  Counts II and III:  Products Liability – Failure to Warn And Products Liability – Design Defect

For reasons similar to those requiring the dismissal of Count I of the Plaintiffs' Complaint, Counts II and II of the Complaint must also be dismissed for failure to state a claim upon which relief may be granted as against Buckeye. In those remaining Counts of the Complaint, the Plaintiffs attempt to set forth claims based upon theories of Products Liability Failure to Warn and Design Defect. To succeed on a failure to warn claim under Pennsylvania law, a plaintiff must meet the standard set forth in the Restatement (Second) of Torts §388. See Overbeck v. Cates, 700 A.2d 970, 972 (Pa.Super.Ct.1997). That section provides:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> > (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
> >
> > (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
> >
> > (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Restatement (Second) of Torts § 388.  A product is defective based upon a failure-to-warn where the product was "distributed without sufficient warnings to notify the ultimate user of the dangers inherent in the product." Mackowick v. Westinghouse Electric, 525 Pa. 52, 56, 575 A.2d 100, 102 (1990). On a strict liability failure to warn claim, a plaintiff must prove "(1) that the

product was defective, (2) that the defect existed when it left the hands of the defendant, and (3) that the defect caused the harm." <u>Schindler v. Sofamor, Inc.</u>, 774 A.2d 765, 771 (Pa.Super.Ct.2001) (citation omitted). Similarly, in order to prevail on a products liability design defect claim under Pennsylvania law, a plaintiff "must prove (1) that the product was defective, (2) that the defect existed when it left the hands of the defendant, and (3) that the defect caused the harm." <u>Zollars v. Troy-Built, LLC</u>, 2011 WL 7102573 (2011).

As a threshold matter, the Plaintiffs have not alleged facts sufficient to impose liability upon Buckeye for failure to warn even the actual purchasers and users of Buckeye's products: the U.S. Navy, U.S. Air Force, and the Pennsylvania Air National Guard. Instead the Plaintiffs simply allege, "Upon information and belief," that the instructions and warnings supplied with the products at issue "did not adequately describe the dangers associated with the use and disposal of AFFF." The Plaintiffs cannot support their failure to warn cause of action based on this single, speculative allegation.

In addition, the Plaintiffs have also failed to sufficiently plead that any purported defect in Buckeye's products, or that Buckeye's failure to warn of that purported defect, were the proximate cause of any alleged injuries to the Plaintiffs. First, the Plaintiffs have not alleged any actual facts upon which to base their conclusory allegations that PFOA and/or PFOS is/are casually linked to bladder cancer, the illness from which Plaintiff Larry Menkes suffers. There are not even any allegations of definitive studies that show a proven correlation between exposure to PFOA and/or PFOS and the development of negative health consequences. Second, the Plaintiffs are far too remote to sufficiently plead proximate cause. "Although the question of causation is normally for the jury, if the relevant facts are not in dispute and the remoteness of the causal connection between the defendant's negligence and the plaintiff's injury clearly

appears, the question becomes one of law." Conti v. Ford Motor Co., 743 F.2d 195, 197–98 (3d Cir.1984). Such is the case here. As more fully explained in Point I.A. of this moving Brief, addressing Count I (Negligence) of the Complaint, the Plaintiffs' alleged exposure to Buckeye's products  - which itself is not actually alleged with specific factual allegations in the Complaint - was not reasonably foreseeable to Buckeye. Buckeye sold its military-specified, government-approved products to the U.S. Navy, the U.S. Air Force, and the Pennsylvania Air National Guard, for use in firefighting training exercises and activities at naval Bases. According to the Plaintiffs' allegations, after the products were used, there were "acres of foam-covered soil" at the Bases, and personnel at the Bases cleaned aircraft hangars in which the products were used "by washing the foam down drains which leached into the ground water which provided drinking/potable water to those serving and working on the bases and surrounding residents." There are no facts to specifically support these conclusory allegations. There are no allegations that the Plaintiffs worked on the Bases. There are no allegations that the Plaintiffs qualified as "surrounding residents," or facts to support any assertion that they did qualify as such. In short, "the remoteness of the causal connection [even as alleged by the Plaintiffs] between the defendant's negligence and the plaintiff's injury clearly appears," and so the question of whether proximate cause can exist here the question "becomes one of law." Conti, 743 F.2d at 197–98. The Plaintiffs have failed to sufficiently plead this element of their claims against Buckeye, and thus Counts II and II of their Complaint, based upon theories of Products Liability, must be dismissed for failure to state a claim as against Buckeye.

In addition, to the extent that the Plaintiffs seek damages based upon theories of strict products liability, once again their allegations are deficient and they fail to state a claim upon which relief may be granted as against Buckeye. With respect to the elements necessary to set

11

forth a facially plausible claim for strict liability for defective products, Pennsylvania has adopted Section 402A of the Restatement (Second) of Torts, which provides:

> One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if the seller is engaged in the business of selling such a product, and it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Assuming, for purposes of this argument, that Buckeye's products are within the category of products that can be deemed to be "in a defective condition unreasonably dangerous to the user or consumer or to his property" (which Buckeye does not concede, and vehemently denies), the Plaintiffs' claims based upon strict liability must fail because the Plaintiffs were not the purchasers, users or direct consumers of those products. They were, at best, "Casual bystanders" in relation to the Buckeye products purchased and used by the U.S. military at its Bases. Under Pennsylvania law, "[c]asual bystanders, and others who may come in contact with the product, as in the case of employees of the retailer, or a passer-by injured by an exploding bottle, or a pedestrian hit by an automobile, have been denied recovery."   Van Buskirk ex rel. Van Buskirk v. W. Bend Co., 100 F. Supp. 2d 281, 284-285 (E.D. Pa. 1999).  According to the Comments under §402(A), Pennsylvania courts "thus far … have not gone beyond allowing recovery to users and consumers . . ."  Restatement (Second) of Torts, §402(a), Comment O. The Plaintiffs are neither users nor consumers of Buckeye's products, and thus cannot recover in strict liability.

Consequently, as detailed in the foregoing paragraphs of this section of this moving Brief, the claims set forth in the Counts II and III of the Plaintiffs' Complaint, as well as the claims set forth in Count I, must be dismissed for failure to state a claim upon which relief may be granted against Buckeye, pursuant to FED.R.CIV.P. 12(b)(6).

## POINT III

### The Plaintiffs' Claims for Punitive Damages Must Be Dismissed

Although not specifically requested in their Complaint, the Plaintiffs have included pleas for relief that might be construed as the basis for a prayer for an award of punitive damages. To the extent that the Plaintiffs' claims not are dismissed in their entirety, any claims for punitive damages must be dismissed.

Pennsylvania has adopted the standard for recovery of punitive damages set forth in the Restatement (Second) of Torts: a defendant's conduct must be "outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Thomas ex rel. Thomas v. Staples, Inc., 2 F. Supp. 3d 647, 663 (E.D. Pa. 2014). A claim for punitive damages must be supported by evidence establishing that "(1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." Crain v. Chesapeake Appalachia, L.L.C., No. 3:12-CV-2343, 2013 U.S. Dist. LEXIS 114671, at *42 (M.D. Pa. Aug. 14, 2013) (quoting Burke v. TransAm Trucking, Inc., 605 F. Supp. 2d 647, 651-52 (M.D. Pa. 2009), and Hutchison v. Luddy, 582 Pa. 114, 870 A.2d 766, 772 (2005)).

Here, the Plaintiffs have included only conclusory allegations related to the "willful, wanton or reckless" acts of the Defendants. They do not allege that Buckeye had an "evil motive." They cannot allege that, by manufacturing and selling a product to the military that conformed to the military's own government-approved specifications, Buckeye acted with "reckless indifference to the rights of others." The Plaintiffs do not, and cannot, allege that

13

Buckeye "had a subjective appreciation of the risk of harm" to which residents of areas outside the Bases would purportedly be exposed as a result of the use of Buckeye's products on the Bases over time being absorbed into the soil, or washed down the drain, and eventually (allegedly) contaminating water supplies in distant geographical areas. They do not allege, and cannot allege, that by manufacturing and selling products to the military in conformance with military specifications Buckeye "acted, or failed to act, as the case may be, in conscious disregard of that risk."  The Plaintiff's Complaint does not support any claims for punitive damages in this case. To the extent those damages are impliedly sought by the Plaintiffs, those claims must be dismissed.


## POINT IV

### The Plaintiffs' Claims For "Medical Monitoring" Damages Must Be Dismissed

Buckeye hereby joins in the Motion to Dismiss the Plaintiffs' Complaint filed on behalf of Defendants Tyco Fire Products, LP and Chemguard (the "Tyco/Chemguard Defendants'). In particular, Buckeye specifically adopts and incorporates herein by reference the Tyco/Chemguard Defendants' argument that the "Court should dismiss Plaintiffs' claims to the extent they seek 'medical monitoring damages' " (Tyco/Chemguard Defendants' Brief, Point II, at pp. 5-8.) For all of the reasons set forth in the Tyco/Chemguard Defendants' moving Brief, this Court should dismiss Plaintiffs' claims for "medical monitoring" damages.

14

## CONCLUSION

For all of the foregoing reasons, the Defendant, Buckeye Fire Protection Company, respectfully requests that the Court dismiss each of the Counts of the Plaintiffs' Complaint against Buckeye at this time, for failure to state a claim upon which relief may be granted as against Buckeye.

Respectfully submitted,

**TAYLOR COLICCHIO LLP**
Attorneys for the Defendant, Buckeye Fire
Protection Company

By: *_/s Philip M. Colicchio_*
      Philip M. Colicchio

Dated: May 15, 2017

15