**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| **LARRY MENKES, ET. AL.,** | : | |
| | : | |
| **PLAINTIFFS,** | : | **CIVIL ACTION** |
| | : | |
| **V.** | : | **NO. 17-0573** |
| | : | |
| **3M COMPANY, ET AL.,** | : | |
| | : | |
| **DEFENDANTS.** | : | |

**MEMORANDUM**

**TUCKER, J.**                                                             **May 21, 2018**

The instant action arises out of Plaintiffs' allegations that Defendants manufactured and sold a product containing toxic chemicals, which allegedly infiltrated the public water supply, resulting in harm to Plaintiffs' health and property.

Before the Court are Defendants Tyco Fire Products LP's and Chemguard Inc.'s Motion to Dismiss Complaint (Doc. 11), Motion on Behalf of Defendant Buckeye Fire Protection Company to Dismiss the Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 12), Defendant 3M Company's Motion to Dismiss Plaintiffs' Complaint (Doc. 13), Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint (Doc. 30), Defendants Tyco Fire Products LP's and Chemguard Inc.'s Reply (Doc. 34), and Defendant 3M Company's Reply (Doc. 36). Defendant National Foam, Inc. has filed no motion or answer in this matter.

Upon careful consideration of the parties' submissions, and for the reasons set forth below, Defendants' Motions are GRANTED IN PART AND DENIED IN PART.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are a married couple who have lived in Warminster, Pennsylvania since 1987. Compl. ¶¶ 1–3,  Doc. 1. Defendants are all manufacturers of fire-suppression products. Compl. ¶¶ 17, 21.

Plaintiffs allege the following:

Aqueous Film Forming Foam ("AFFF") is a fire-fighting foam manufactured by Defendants. Compl. ¶¶ 17, 21. Defendants sold AFFF to the United States Department of the Navy ("Navy") for use at Willow Grove Naval Air Station Joint Reserve Base in Horsham Township, Pennsylvania, and the former Naval Air Warfare Center in Warminster Township, Pennsylvania ("Bases"). Compl. ¶¶ 42, 46. The AFFF manufactured by Defendants contained perfluorochemicals ("PFCs") believed to include perfluoroctanesulfonic acid ("PFOS") and perfluorooctanoic acid ("PFOA"), and/or other PFCs that degrade into PFOS and/or PFOA. Compl. ¶¶ 15–18, 21.

Plaintiffs allege that PFOS/PFOA degrade very slowly in the environment and can leach through soil, polluting groundwater and remaining in the environment for decades. Compl. ¶¶ 24–25. PFOS/PFOA-contaminated water may not be sanitized by boiling the water or using disinfectants like chlorine. Compl. ¶ 6. Once PFOS/PFOA-contaminated water is ingested, it can remain in the human body for years. Compl. ¶¶ 27, 39. PFOS/PFOA are considered toxic and are associated with health risks even when ingested at low levels. Compl. ¶¶ 30–31. PFOS/PFOA exposure is associated with increased risk of testicular cancer, bladder cancer, kidney cancer, prostate cancer, multiple myeloma, thyroid disease, high cholesterol, ulcerative colitis, pregnancy-incused hypertension, non-Hodgkin lymphoma, and increased uric acid. Compl. ¶ 32.

Plaintiffs allege that each Defendant manufactured and sold AFFF pursuant to the Navy's Military Specification MIL-F-24385. Compl. ¶ 42. Military Specification MIL-F-24385 set the performance standards for AFFF to be sold to the military and required that AFFF "have no adverse effect on the health of personnel when used for its intended purpose." Compl. ¶¶ 39, 40, 43. According to Plaintiffs, Defendants manufactured and sold AFFF containing PFOS/PFOA for use at the Bases when they knew or should have known the AFFF would have adverse effects on the health of persons in surrounding communities. Compl. ¶¶ 47–49. Plaintiffs allege that Defendants failed to warn of the adverse health effects of AFFF when Defendants knew or should have known that the AFFF would have adverse health effects when used for its intended purposes. Compl. ¶ 50.

For decades, the military used AFFF in training exercises and as protection for aircraft hangars. Compl. ¶¶ 56–60. Training exercises required suppressing fires on the ground and coating runways in anticipation of aircraft landings, which resulted in soil contamination with PFOS/PFOA. Compl. ¶ 61. In addition, the ceiling units in aircraft hangars containing gallons of AFFF experienced accidental discharges, which resulted in the product being washed down the drain and contaminating groundwater. Compl. ¶ 62. Plaintiffs allege that PFOS/PFOA, thus, contaminated the drinking water in the area surrounding the Bases, exposing residents to toxic chemicals in their drinking, cooking, and bathing water. Compl. ¶ 66.

In 2012, the Environmental Protection Agency ("EPA") included PFOS/PFOA on a contaminant monitoring list, requiring water providers to test for the presence of the chemicals. Compl. ¶ 75. In 2013–2014, the Warminster Public Authority tested its wells and found PFOS levels ranging from 40 parts per trillion ("ppt") to 1090 ppt and PFOA levels ranging from 20 ppt to 890 ppt. Compl. ¶ 76. The Authority closed six (6) of its wells due to contamination.

Compl. ¶ 76. In May 2016, the EPA set its Health Advisory for Lifetime Exposure to PFOA and PFOS at 70 ppt. Compl. ¶ 77. As a result of the well testing and announcement of the exposure limit, many residents, including Plaintiffs, learned that their drinking supply was contaminated with PFOS and/or PFOA. Compl. ¶ 81.

Plaintiff Larry Menkes was diagnosed with bladder cancer in 2011. Compl. ¶ 97. Plaintiffs allege Mr. Menkes's condition is the result of his exposure to PFOS/PFOA in Warminster's public water supply. Compl. ¶ 97. As a result of this exposure, Mr. Menkes claims to have incurred substantial medical bills, loss of earnings, impairment of earning capacity, pain, suffering, and mental distress. Compl. ¶ 99. Mrs. Menkes claims to have suffered the loss of her husband's companionship and consortium. Compl. ¶ 100.

Plaintiffs bring three causes of action: negligence, failure to warn, and design defect. Additionally, Plaintiffs seek, *inter alia*, medical monitoring, property-related, and punitive damages. Compl. ¶¶ 122, 124.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter to state a claim for relief that is "plausible on its face." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When presented with a motion to dismiss for failure to state a claim, district courts must conduct a three-part analysis. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). First, the court must take note of the elements a plaintiff must plead to state a claim. *Santiago*, 629 F.3d at 130. Second, the court must identify allegations that are not entitled to the assumption of truth because they "are no more than conclusions." *Id.* Finally, the court must assume well-

pleaded factual allegations to be true, and determine whether they "plausibly give rise to an entitlement for relief." *Id.*

Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a "formulaic recitation of the elements of a cause of action" will not be sufficient to meet this standard. *McTernan v. City of York*, 564 F.3d 636, 646 (3d Cir. 2009). Rule 8 requires a showing of "enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *Id.* "A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.*

## III. DISCUSSION

Defendants move to dismiss Plaintiffs' Complaint asserting causes of action for negligence (Count One), failure to warn (Count Two), and design defect (Count Three). The Court finds that Plaintiffs have sufficiently pled a cause of action for negligence. The Court also finds that Plaintiffs have sufficiently pled a cause of action for failure to warn and design defect in negligence. However, the Court finds that Plaintiffs have not sufficiently pled a cause of action for failure to warn and design defect in strict liability or medical monitoring. The Court further finds that Plaintiffs have not sufficiently pled the asserted property-related damages. The Court grants leave for Plaintiffs to amend their medical monitoring claim and property-related damages claim.

### A. Plaintiffs' Negligence Claim (Count One)

To state a claim for negligence, Plaintiffs must plead: "[1] the presence of a legal duty or obligation; [2] a breach of that duty; [3] a causal link between that breach and the injury alleged; and [4] actual damage or loss suffered . . . as a consequence." *Wright v. Eastman*, 63 A.3d 281,

284 (Pa. Super. Ct. 2013). Defendants do not appear to dispute that Plaintiffs have alleged a breach of a duty, or that Plaintiffs have pled actual damages in the form of personal injury. Therefore, at issue here is the presence of: (1) a legal duty or obligation, and (2) a causal link between that breach and the injury alleged.

### 1. Plaintiffs' Allegations Sufficiently Support The Existence Of A Duty

Defendant Buckeye Fire Protection Company ("Buckeye") argues that it did not owe a duty to Plaintiffs because it was not reasonably foreseeable that Defendants' product would come into contact with Plaintiffs. Buckeye's Mot. Dismiss 7, Doc. 12. Buckeye argues that Plaintiffs failed to specify whether their particular water supply was within a certain proximity to the Bases or allege any facts to show that their water supply was affected by groundwater contamination caused by activities on the Bases. Buckeye's Mot. Dismiss 7–8. Therefore, Buckeye contends it did not owe Plaintiffs a duty because the facts pled are insufficient to show that it was reasonably foreseeable that Plaintiffs would come into contact with its product. Buckeye's Mot. Dismiss 7.

Defendant 3M Company ("3M") argues that it did not owe a duty to Plaintiffs because 3M and Plaintiffs had no relationship, and Plaintiffs have failed to plead facts to show their injuries were reasonably foreseeable. 3M's Mot. Dismiss 12–13, Doc. 13. 3M contends that in the absence of a relationship between the parties, duty is limited to risks that are reasonably foreseeable. 3M's Mot. Dismiss 12. 3M argues that the Complaint contains only speculative and conclusory statements that provide no plausible basis for the inference that 3M's manufacture and sale of AFFF to the Navy would harm Plaintiffs. 3M's Mot. Dismiss 13.

Plaintiffs argue that Defendants owed them a duty of care because it was reasonably foreseeable that Defendants' products would injure Plaintiffs. Pls.' Mem. Law in Opp'n to Defs.'

Mot. Dismiss 9–10, Doc. 30. Plaintiffs contend they have sufficiently pled that Defendants knew or should have known the AFFF contained PFOS/PFOA that have negative health effects, that the use of AFFF in fighting fires would cause PFOS/PFOA to contaminate the groundwater, and that users of drinking water supplied by the contaminated groundwater would be exposed to PFOS/PFOA. Pls.' Mem. Law in Opp'n to Defs.' Mot. Dismiss 10–11.

Whether a duty exists is a question of law. *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993). To determine whether a duty exists, a court applying Pennsylvania law must weigh several factors, including: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution. *Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000). No individual factor is dispositive, rather, "a duty will be found to exist where the balance of these factors weighs in favor of placing such a burden on a defendant." *Citizens Bank of Pa. v. Reimbursement Techs., Inc.*, 609 F. App'x 88, 92 (3d Cir. 2015). Consistent with its standard of review, the Court will consider whether a duty exists assuming the facts stated in Plaintiffs' Complaint are true.

The first factor requires the Court to consider the relationship between the parties. *Althaus*, 756 A.2d at 1169. The relationship between the parties does not have to be a specific, legally-defined relationship. *Charlie v. Erie Ins. Exch.*, 100 A.3d 244, 252 (Pa. Super. Ct. 2014). However, where courts have found no discernable relationship between plaintiff and defendant, this factor weighs against the existence of a duty. *See Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 40, 62 (3d Cir. 2009) (finding relationship factor weighed against a duty where a child was injured when her grandfather backed over her foot while using lawnmower manufactured by a

defendant that lacked "back-over" protection); *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1009 (Pa. 2003) (finding relationship factor weighed against a duty where a child's use of a lighter manufactured by a defendant resulted in a fatal house fire). In this case, there is no discernable relationship between the parties. The pleadings show that Defendants sold AFFF directly to the Navy for use on the Bases, but had no relationship, contractual or otherwise, with Plaintiffs. This factor therefore weighs against finding a duty.

The second factor requires an examination of the social utility of Defendants' conduct. *Althaus*, 756 A.2d at 1169. In *Althaus*, the Pennsylvania Supreme Court considered whether a therapist who treats a child for alleged parental sexual abuse owes a duty of care to that child's parents. *Id.* at 1167. The court found that therapists who treat sexually abused children perform a valuable and useful activity to society, and social utility, therefore, disfavored expanding a therapists' duty of care to non-patients, and especially accused abusers. *Id.* at 1170. In *Phillips*, the Pennsylvania Supreme Court considered the social utility of a butane lighter without child safety features and determined that such a device did not have as much social utility as one with child safety features. *Phillips*, 841 A.2d at 1009. The court determined this factor weighed in favor of finding a duty. *Id.* In *Charlie*, the Pennsylvania Superior Court considered whether a restaurant owed a duty to prevent its greasy rags from spontaneously combusting in a laundromat's dryer. *Charlie*, 100 A.3d at 247. The court found that the social utility of laundering rags had relatively minimal societal impact, and concluded the factor did not weigh in favor or against. *Id.* at 255.

Here, the conduct at issue is Defendants' choice to manufacture fire-fighting foam with allegedly toxic perfluorinated compounds, PFOS and PFOA. Fire-fighting foam itself has immense social utility, with its power to mitigate catastrophic harm to people and property.

According to Plaintiffs' Complaint, the Navy's specification for AFFF required the use of fluorocarbon surfactants. Compl. ¶ 40. To the extent that fire-fighting foam is only effective when it contains fluorocarbon surfactants, its social utility is tied to the use of such chemicals. However, Plaintiffs contend that Defendants chose to use particular types of fluorocarbon surfactants (those that degrade into PFOS/PFOA) that cause harm to people and the environment. Compl. ¶ 44. Plaintiff alleges that Defendant 3M ceased producing AFFF that contained PFOS/PFOA in 2002 due to health and environmental concerns. Compl. ¶ 69. To the extent that Defendants could have chosen less harmful surfactants to make an equally effective fire-fighting foam, such a product would have more social utility than fire-fighting foam made with PFOS/PFOA. This factor, therefore, weighs in favor of finding a duty.

We must weigh the social utility of Defendants' conduct against the third factor, the nature of the risk and foreseeability of Plaintiffs' exposure to toxic chemicals. *Althaus*, 756 A.2d at 1170. The concept of foreseeability in this context means "the likelihood of the occurrence of a *general* type of risk rather than the likelihood of the occurrence of the precise chain of events leading to the injury." *Charlie*, 100 A.3d at 255. In *Phillips*, the court found that the risk of injury from children playing with lighters without child safety features was substantial. *Phillips*, 841 A.2d at 1009. The court further found that it was reasonably foreseeable to defendant that its lighters would fall into the hands of small children, some of whom might start fires because of the absence of child safety features. *Id.* In *Charlie*, the court acknowledged the substantial harm that resulted from spontaneously combusting rags in a dryer. *Charlie*, 100 A.3d at 257. However, despite the gravity of this harm, the court doubted that the defendants "let alone the general public" would have reasonably anticipated spontaneous combustion under those circumstances. *Id.*

Here, Plaintiffs allege that exposure to PFOS/PFOA results in increased risk of serious health conditions. Drawing inferences in the light most favorable to Plaintiffs, there is at least some risk of harm that Plaintiffs would be exposed to the Warminster public water supply, which has been found to be contaminated. Compl. ¶ 76. Furthermore, it is foreseeable to a manufacturer that toxic chemicals used at a particular facility will not necessarily remain confined to that facility, especially when those chemicals are in the form of a water-based foam that can leach into the groundwater. It is equally foreseeable that such chemicals would harm the surrounding community. This factor, therefore, weighs in favor of finding a duty.

The fourth factor requires consideration of the consequences of imposing a duty upon the actor. *Althaus*, 756 A.2d 1166, 1169. In *Althaus*, this factor weighed against finding a duty because the court determined that expanding therapists' duty of care to non-patients would threaten the confidential relationship between therapists and their patients. *Althaus*, 756 A.2d at 1170–71. In *Phillips*, the court found that though adding child safety features to lighters would increase the cost of manufacturing them, such a cost would be nominal. *Phillips*, 841 A.2d at 1009–10. Therefore, this factor weighs in favor of finding a duty. *Id.*

Although there is little in the pleadings to consider with respect to the fourth factor, it appears at this stage that this factor also weighs in favor of finding a duty because imposing such a duty would not create additional costs for Defendants. Manufacturers already owe a duty to the *consumers and users* of their products to use reasonable care in manufacturing their products. *See Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 283 (Pa. 2014) (emphasis added). Presumably, imposing a duty to non-consumers or users living near facilities where a manufacturer's products are used, such as Plaintiffs, would require no different reasonable care. Extending that duty to third parties living near the sites where their products are used is not likely to alter the care a

manufacturer should take in manufacturing its products, and, therefore, not likely to increase the cost of manufacturing. Here, manufacturing AFFF without PFOS/PFOA would benefit the users of those products as well as the surrounding community. This factor, therefore, weighs in favor of finding a duty.

The final factor requires the Court to consider the overall public interest in the proposed solution. *Althaus*, 756 A.2d 1166, 1169. In *Phillips*, the court considered the public interest in imposing a duty on lighter manufacturers to produce a lighter with child safety features. *Phillips*, 841 A.2d at 1010. It found, quite easily, that such a duty would be in the public interest. *Id.* Here, imposing a duty on manufacturers of fire-fighting foam to produce such foam without toxic chemicals that could harm people in communities where it is used, likewise, would be in the public interest. This factor also weighs in favor of a duty.

The balance of the factors weighs in favor of placing a burden on Defendants. Therefore, the Court finds that Plaintiffs have sufficiently pled facts showing that Defendants owed a duty to Plaintiffs.

### 2. Plaintiffs Pled Facts Sufficient To Show That Defendants' Breach Was The Proximate Cause Of Their Injuries

Defendant 3M argues that Plaintiffs failed to demonstrate that Plaintiffs' injuries were the proximate cause of 3M's actions for the same reasons Plaintiffs failed to plead a duty. 3M's Mot. Dismiss 14. In particular, 3M argues that the Complaint does not allege the concentrations of toxic chemicals in Plaintiffs' particular water supply or whether Plaintiffs themselves were tested for the presence of the chemicals. 3M's Mot. Dismiss 14.

Defendants Tyco Fire Products LP ("Tyco") and Chemguard, Inc. ("Chemguard") argue that this Court should apply a six-factor "remoteness" test to find that Plaintiffs have not sufficiently pled proximate cause. Tyco Chemguard's Mot. Dismiss 4–5, Doc. 11-1. Tyco and

Chemguard argue that Plaintiffs' allegations are too remote to satisfy the test because Plaintiffs did not show that Defendants intended to harm Plaintiffs, or that Defendants exerted any control over the AFFF after its sale. Tyco Chemguard's Mot. Dismiss 5.

Plaintiffs argue that this Court should apply the "substantial factor" doctrine to find that they have sufficiently pled proximate cause. Pls.' Mem. Law in Opp'n to Defs.' Mot. Dismiss 11–12. Plaintiffs argue they have sufficiently pled that Defendants substantially caused their harm by manufacturing AFFF with PFOS/PFOA and selling it for use at the Bases where it subsequently contaminated the community's groundwater. Pls.' Mem. Law in Opp'n to Defs.' Mot. Dismiss 12.

The determination of whether a defendant's conduct was the proximate cause of a plaintiff's harm is one for the jury if the jury could reasonably differ on the issue. *Ford v. Jeffries*, 379 A.2d 111, 114 (Pa. 1977). However, where the jury could not reasonably find proximate cause, a court may decide the issue as a matter of law. *Chetty Holdings Inc. v. NorthMarq Capital, LLC*, 556 F. App'x 118, 121 (3d Cir. 2014) (citing *Ford*, 379 A.2d at 114).

The Third Circuit announced a six-factor test to analyze remoteness for RICO and antitrust claims. *See Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 439 (3d Cir. 2000). The test has also been applied to "complex causation problems of economic harm to a remote plaintiff." *City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882, 904 (E.D. Pa. 2000), *aff'd*, 277 F.3d 415 (3d Cir. 2002) (considering whether gun manufacturers could be held liable for negligent entrustment of their products); *see also Camden Cty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*, 123 F. Supp. 2d 245, 248 (D.N.J. 2000), *aff'd*, 273 F.3d 536 (3d Cir. 2001) (considering whether firearms manufacturers created a public nuisance due to marketing and distribution policies).

The Court declines to apply the remoteness test, which Defendants Tyco and Chemguard argue is appropriate here, because remoteness is just one aspect of the proximate cause analysis, and this case is not comparable to other cases applying the six-factor test. Instead, the Court will conduct a more traditional proximate cause analysis.

Pennsylvania follows the Restatement rule that proximate cause requires a determination that the defendant's conduct was a "substantial factor" in bringing about the harm. *Ford*, 379 A.2d at 114; *see Restatement (Second) of Torts* § 431 (1965). Courts consider the following factors to determine whether the "substantial factor" test is met: "(1) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it; (2) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; [and] (3) lapse of time." *Vattimo v. Lower Bucks Hosp., Inc.*, 465 A.2d 1231, 1233–34 (Pa. 1983); *see also Restatement (Second) of Torts* § 433 (1965).

Plaintiffs satisfy the "substantial factor" test. As to the first prong, based solely on the pleadings, at least two other factors may have contributed to the contamination of Plaintiffs' drinking water. First, the Navy's use of AFFF on its bases resulted in the introduction of PFOS/PFOA to the groundwater. Second, the municipality's failure to detect and remediate the presence of PFOS/PFOA in its water supply resulted in an unknown period of contamination. However, neither the Navy's, nor the municipality's, conduct would have produced harm had the AFFF not contained PFOS/PFOA. The second prong of the "substantial factor" test reinforces this point. Defendants' choice to manufacture AFFF with PFOS/ PFOA created the hazard that was later introduced into Plaintiffs' community—it is the force that continuously and actively

caused the harm. As to the third prong, the lapse of time involved is at best uncertain at this

stage. Plaintiffs allege that AFFF was used on the Bases for decades, but also that PFOS/PFOA

can remain in the environment and cause harm for equally long periods of time. This factor does

not weigh against finding proximate cause.

Despite the fact that at least two other factors may have also contributed to the harm, the

Court is unable to say at this stage that no jury could conclude that Defendants' conduct was a

substantial factor in causing Plaintiffs' harm. Therefore, Plaintiffs have sufficiently pled

proximate cause for the purposes of their negligence claim at this stage of litigation.

Plaintiffs have sufficiently met the factors to state a claim for negligence.

**B.      Damages**

      **1.      Plaintiffs' Property-Related Damages Are Dismissed Without Prejudice Because They Have Not Sufficiently Pled Physical Damage To Their Property**

Defendants Tyco and Chemguard request that all of Plaintiffs' claims for property-based

damages be dismissed because Plaintiffs have no property interest in community water. Tyco

Chemguard's Mot. Dismiss 9–10. Defendants argue that Plaintiffs have not alleged any physical

damage to Plaintiffs' property, but rather only damage to a community resource to which they

have no personal right. Tyco Chemguard's Mot. Dismiss 9–10. Plaintiffs argue that their

statement in the Complaint that the contamination of the water supply has caused them to suffer

damages to their home and real property is sufficient. Pls.' Mem. Law in Opp'n to Defs.' Mot.

Dismiss 6.

In their Complaint, Plaintiffs request "property damages, including, without limitation,

loss of value, annoyance, disturbance, intrusion, harassment and inconvenience," as well as

monetary damages associated with "the investigation, remediation, and monitoring of their

drinking/potable water" and "increased costs of drinking/potable water." Compl. ¶ 122. Plaintiffs aver that the groundwater in the undefined "Affected Area" has been contaminated with PFOA/PFOS and that the Warminster public water supply is contaminated. Compl. ¶¶ 76, 85.

Two courts in New York have considered a similar claim and defense, and, applying New York law, found that plaintiffs had adequately pled property damages. *See Baker v. Saint-Gobain Performance Plastics Corp.*, 232 F. Supp. 3d 233, 246 (N.D.N.Y. 2017); *Benoit v. Saint-Gobain Performance Plastics Corp.*, 116CV1057LEKDJS, 2017 WL 3316132, at *7–8 (N.D.N.Y. Aug. 2, 2017). Like Mr. and Mrs. Menkes, those plaintiffs also alleged that the municipal water supply had been contaminated. *Id.* However, unlike Mr. and Mrs. Menkes, those plaintiffs averred that the contamination had reached and was presently affecting their real property. *Id.*

In Pennsylvania, property damages require physical damage to property, even if temporary. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 798 (3d Cir. 1994). In a case concerning contamination, courts have found that plaintiffs need to show that a hazardous chemical "was and continues to be physically present on their properties." *See Gates v. Rohm and Haas Co.*, CIV.A. 06-1743, 2008 WL 2977867, at *3 (E.D. Pa. July 31, 2008).

Here, Plaintiffs have failed to allege that their property has been affected by the contaminated groundwater or contaminated public water supply. Plaintiffs do not allege that their property lies within the undefined "Affected Area." Plaintiffs do not allege that their property is serviced by the Warminster public water supply or that any public water that reaches their property is or has been contaminated. Therefore, Plaintiffs fail to state a claim for property-related damages because they have not alleged physical damage to their real property.

## 2. Plaintiffs' Loss Of Consortium Claim Is Not Barred By The Economic Loss Doctrine Because It Is Not Purely Economic

Defendant 3M argues that Mrs. Menkes's claim for loss of consortium is barred by the economic loss doctrine because she did not plead any physical injury. 3M's Mot. Dismiss 9–10. Plaintiffs do not address this argument.

The economic loss doctrine provides that no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage. *Spivack v. Berks Ridge Corp. Inc.*, 586 A.2d 402, 405 (Pa. Super. Ct. 1990). The rationale for the doctrine is that tort law should not compensate parties for losses suffered as a result of a breach of duties "assumed only by agreement," such as breach of contract or warranty. *Constar, Inc. v. Natl. Distrib. Cntrs. Inc.*, 101 F. Supp. 2d 319, 322 (E.D. Pa. 2000). In the context of products, the economic loss doctrine bars actions involving a malfunctioning product where the only resulting damage is to the product itself, and there is no other damage to "other property." *REM Coal Co., Inc. v. Clark Equip. Co.*, 563 A.2d 128, 143 (Pa. Super. Ct. 1989).

The economic loss doctrine does not bar Mrs. Menkes's loss of consortium claim. Loss of consortium refers to the loss of the "company, society, co-operation, affection, and aid" of a spouse. *Cleveland v. Johns-Manville Corp.*, 690 A.2d 1146, 1149 (Pa. 1997). A wife who brings a loss of consortium claim "does not herself sustain a physical injury, but rather, damaged marital expectations as a result of injuries to her husband." *Pahle v. Colebrookdale Twp.*, 227 F. Supp. 2d 361, 374–75 (E.D. Pa. 2002). It is a derivative claim that is dependent on the success of the husband's claim. *Id.* A loss of consortium claim does not arise from purely economic damages, nor does it arise primarily from a contractual agreement between spouses. Therefore, the economic loss doctrine does not bar Mrs. Menkes's loss of consortium claim.

### 3. Plaintiffs' Adequately Pled Punitive Damages

Defendants 3M and Buckeye seek dismissal of Plaintiffs' claims for punitive damages, claiming they have not been adequately pled. Buckeye's Mot. Dismiss 13–14; 3M's Mot. Dismiss 11–12. Defendants argue that Plaintiffs have pled only conclusory allegations that Defendants were subjectively aware of the risks of their conduct. Buckeye's Mot. Dismiss 13–14; 3M's Mot. Dismiss 11–12. Plaintiffs argue that if they can prove Defendants had knowledge of the facts alleged, that knowledge would support a finding of punitive damages. Pls.' Mem. Law in Opp'n to Defs.' Mot. Dismiss 8–9.

Punitive damages are appropriate where "the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." *Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005). The conduct must go beyond ordinary negligence and "into the realm of behavior which is willful, malicious or so careless as to indicate wanton disregard for the rights of the parties injured." *Id.* The trend in this Circuit is to allow adequately pled claims of punitive damages based on negligence to proceed to discovery. *Young v. Westfall*, 406-CV-2325, 2007 WL 675182, at *3 (M.D. Pa. Mar. 1, 2007); *see also Tucker v. Horn*, 4:16-CV-0071, 2016 WL 4679018, at *4 (M.D. Pa. Sept. 7, 2016) (denying motion to dismiss punitive damages); *Estrada v. Home Depot U.S.A.*, CV 08-4367, 2009 WL 10687685, at *2 (E.D. Pa. Jan. 7, 2009) (same).

Dismissing such claims at the pleading stage would be premature where Plaintiffs have adequately stated a claim for punitive damages based on negligence. Here, as in *Young v. Westfall*, Plaintiffs have pled that Defendants "acted in a reckless manner, that their actions were outrageous, and that they acted despite knowing such actions created a high risk of physical harm." *Young v. Westfall*, 2007 WL 675182, at *2. Plaintiffs sufficiently pled the requirements for punitive damages to proceed to discovery.

**C.** **Plaintiffs' Failure To Warn And Design Defect Claims (Counts Two And Three)**

**1.** **Plaintiffs' Strict Products Liability Claims Are Dismissed Because They Were Not Users Or Consumers Of AFFF**

Defendants 3M and Buckeye argue that Plaintiffs' claims for strict products liability must fail because Plaintiffs were not the users or consumers of the allegedly defective product. Buckeye's Mot. Dismiss 11–12; 3M's Mot. Dismiss 15–16. Plaintiffs argue that Pennsylvania courts have allowed bystanders to recover for strict products liability claims and that the Court should do so here. Pls.' Mem. Law in Opp'n to Defs.' Mot. Dismiss 12–13.

The Third Circuit has predicted that the Pennsylvania Supreme Court will adopt §§ 1 and 2 of the Third Restatement's definition of a cause of action for strict products liability. *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 53 (3d Cir. 2009). However, since that time, the Pennsylvania Supreme Court has expressly declined to adopt the Restatement (Third) of Torts as it applies to strict liability claims. *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 399 (Pa. 2014). Pennsylvania, therefore, continues to rely on the Restatement (Second) of Torts. *Id.* at 357. The Restatement (Second) provides that:

> One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Restatement (Second) of Torts § 402A (2017).

Pennsylvania courts have permitted some bystanders to pursue strict products liability claims under § 402A. *D'Antonio v. FMC Techs., Inc.*, 2:16-CV-703, 2016 WL 7324151, at *2 (W.D. Pa. Sept. 30, 2016) (citing *Webb v. Zern*, 220 A.2d 853, 854 (Pa. 1966); *Salvador v.*

*Atlantic Steel Boiler Co.*, 319 A.2d 903, 907 (Pa. Super. Ct. 1974)). However, the Pennsylvania Supreme Court cases "do not specifically address a bystander's ability to sue under Section 402A." *D'Antonio*, 2016 WL 7324151, at *2 (citing *Berrier*, 563 F.3d at 49). In *D'Antonio*, the court noted that while district courts in Pennsylvania have in the past predicted that Pennsylvania state courts would expand the cause of action to bystanders, the state courts have declined to do so, and there is ample case law limiting recovery to "ultimate users or consumers." *D'Antonio*, 2016 WL 7324151, at *2 (citing *Riley v. Warren Mfr.*, 688 A.2d 221, 227 (Pa. Super Ct. 1997)). The *D'Antonio* court ultimately declined to allow recovery for a truck driver charged with transporting the product who was not its user or consumer. *D'Antonio*, 2016 WL 7324151, at *3.

In 2008, the Third Circuit requested certification of a question of law relating to the application of strict products liability to bystanders and the Pennsylvania Supreme Court denied the request. *Tincher*, 104 A.3d 328, 375 (Pa. 2014). In 2014, the Pennsylvania Supreme Court had the opportunity to adopt the Third Restatement of Torts, which would have extended strict products liability to bystanders, and it declined to do so. *Id.* at 399. It seems unreasonable to predict that Pennsylvania courts would extend § 402A to bystanders now.

Even if this Court were to determine that it was appropriate to allow recovery for some bystanders, no Pennsylvania federal or state court has allowed such a claim where the plaintiff was not in direct proximity to the defective product. In *Webb*, the court allowed a strict liability claim involving a plaintiff who was injured by an exploding keg that he had not purchased or used. *Webb*, 220 A.2d at 854. In *Salvador*, the court allowed a strict liability claim involving an employee who was injured by an exploding steam boiler in his workplace. *Salvador*, 319 A.2d at 907. Here, Plaintiffs were not users or consumers of AFFF, and they also were not present on the Bases where the AFFF was used.

Therefore, because Plaintiffs are not users or consumers of AFFF, but rather mere bystanders, their claims for strict products liability must be dismissed.

### 2. Plaintiffs' Successfully State Common Law Products Liability Claims Because The Elements Of Negligence Have Been Sufficiently Pled

Plaintiffs also plead products liability causes of action based on common law negligence. To prevail in such an action, a plaintiff must show that: "(1) the defendant owed a duty of care, (2) the breach of which (3) caused (4) damages." *Wright v. Ryobi Techs., Inc.*, 175 F. Supp. 3d 439, 454–55 (E.D. Pa. 2016). For a negligent failure-to-warn claim, a plaintiff must show "that the absence or inadequacy of the warnings was the factual or proximate cause of the injury." *Id.*

Defendants Buckeye and 3M argue that Plaintiffs' negligent design defect and failure to warn claims must fail for the same reasons their general negligence claim fails—Plaintiffs did not adequately plead proximate cause. Buckeye's Mot. Dismiss 9–11; 3M's Mot. Dismiss 20–21. Plaintiffs argue that their negligent design defect and failure to warn claims succeed for the same reason their general negligence claim succeeds—they have adequately alleged a duty of care and their harms were reasonably foreseeable to Defendants. Pls.' Mem. Law in Opp'n to Defs.' Mot. Dismiss 18–19.

With regard to its negligent design claim, and relying on the analysis in Section III.A above, Plaintiffs have successfully pled that Defendants owed them a duty, that they breached that duty in manufacturing AFFF with PFOA/PFOS, and that such negligence caused their injuries. With regard to its negligent failure to warn claim, and relying on the analysis in Section III.A above, Plaintiffs have also successfully pled that Defendants owed them a duty, that they breached that duty by failing to warn the users of AFFF about its harmful effects on human health and the environment, and that such negligence caused their injuries.

### D. Plaintiffs' Medical Monitoring Claim

In their Complaint, Plaintiffs directly address medical monitoring on only one occasion. In the paragraph enumerating their alleged damages, Plaintiffs aver that they have "suffered and continue to suffer damages, including **medical monitoring** damages; monetary damages associated with the investigation, treatment, remediation, and monitoring of their drinking/potable water; increased costs of drinking/potable water, economic loss, property damages, including without limitation, loss of value, annoyance, disturbance, intrusion, harassment and inconvenience; all for which Plaintiffs are entitled to recover damages." Compl. ¶ 122 (emphasis added).

A plaintiff must prove the following elements to prevail on a common law claim for medical monitoring:

> (1) exposure greater than normal background levels;
> (2) to a proven hazardous substance;
> (3) caused by the defendant's negligence;
> (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease;
> (5) a monitoring procedure exists that makes the early detection of the disease possible;
> (6) the prescribed monitoring regime is different from that normally recommended in the absence of exposure; and
> (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

*Redland Soccer Club, Inc. v. Dept. of the Army and Dept. of Def.*, 696 A.2d 137, 145–46 (Pa. 1997).

Defendants Tyco, Chemguard, and 3M argue that Plaintiffs have not pled specific facts sufficient to sustain the elements of the claim. Tyco Chemguard's Mot. Dismiss 7; 3M's Mot. Dismiss 21. Defendants Tyco and Chemguard contend that Plaintiffs' allegations regarding their increased risk duplicates allegations from another proceeding and do not appear to apply to

Plaintiffs' circumstances. Tyco Chemguard's Mot. Dismiss 7. Defendants Tyco and Chemguard also argue that Plaintiffs' allegations of risk are too general and that the remaining elements of the claim are unsupported by any facts in the Complaint. Tyco Chemguard's Mot. Dismiss 7. Defendant 3M argues that Plaintiffs have failed to identify a serious latent disease and fail to allege facts concerning the medical monitoring procedure to which they claim entitlement. 3M's Mot. Dismiss 22.

Plaintiffs argue that they have pled facts from which it is reasonable to infer all the damages they allege, including medical monitoring. Pls.' Mem. Law in Opp'n to Defs.' Mot. Dismiss 20–21. Additionally, Plaintiffs argue that they are not required, at this stage, to prove their case with respect to the final three medical monitoring elements because *Redland* requires proof via expert testimony. Pls.' Mem. Law in Opp'n to Defs.' Mot. Dismiss 21; *see Redland Soccer Club, Inc.*, 696 A.2d at 146.

Plaintiffs have sufficiently pled elements one through three and have sufficiently pled element four to the extent they identify specific serious latent diseases. However, Plaintiffs have not sufficiently pled elements five through seven because their allegations do not even generally state the required elements. Therefore, Plaintiffs' medical monitoring claim cannot survive a motion to dismiss.

No Pennsylvania court has addressed a medical monitoring claim related to the precise toxic substances Plaintiffs' allege have harmed them. However, medical monitoring claims concerning other toxic substances have been dismissed under Rule 12(b)(6) where the plaintiff failed to identify a serious latent disease, *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 955 F. Supp. 2d 452 (E.D. Pa. 2013), and where allegations were legally insufficient because

they were too generalized, *In re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*, No. 10-2401, 2011 WL 4006639 (E.D. Pa. 2011).

In *Slemmer*, the plaintiffs alleged in their complaint that the toxic substance at issue caused "headaches and other neurological issues, and eye, nose and throat irritations as well as respiratory issues." *Slemmer*, 955 F. Supp. 2d at 465. The *Slemmer* plaintiffs also alleged generally that they "developed a significantly increased risk of contracting a serious latent disease." *Id.* The court found that these statements did not identify a serious latent disease, and the plaintiffs, therefore, failed to state a claim for medical monitoring. *Id.*

After amending their complaint, the plaintiffs identified expected injuries such as "headaches, neurological issues, and respiratory ailments including asthma, lung damage, other respiratory and breaching problems, and skin, eye and throat irritation." *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, CIV.A. 12-6542, 2013 WL 5655480, at *2 (E.D. Pa. Oct. 17, 2013) (*Slemmer II*). The court found that the plaintiffs had still failed to identify a serious latent disease because "phrases such as 'neurological issues,' 'respiratory ailments,' and 'permanent lung damage and respiratory problems' are vague catch-all phrases that encompass a wide variety of conditions or symptoms." *Slemmer II*, 2013 WL 5655480, at *3. The court reasoned that that such vague allegations did not give defendants fair notice of the grounds of the claim, and that defendants would need to know "which lung diseases are relevant when conducting discovery or retaining experts." *Id.*

Here, Plaintiffs allege that exposure to PFOS/PFOA is associated with increased risk of "various diseases and cancers in humans, including, but not limited to: testicular cancer, bladder cancer, kidney cancer, prostate cancer, multiple myeloma, disorders such as thyroid disease, ulcerative colitis, and pregnancy-induced hypertension, non-Hodgkin lymphoma, increased uric

acid as well as other conditions." Compl. ¶ 32. While the specific diseases identified, such as testicular, bladder, kidney, and prostate cancer and non-Hodgkin lymphoma, satisfy the pleading standard for a serious latent disease, phrases such as "thyroid disease" and "other conditions" are too vague to give Defendants adequate notice of the conditions Plaintiffs seek to have monitored.

In *In re Avandia*, a district court considered a claim for medical monitoring on a motion to dismiss. *In re Avandia* , No. 10-2401, 2011 WL 4006639 (E.D. Pa. 2011). The court dismissed the claim because, as pled, it "essentially tracks the elements of the claim, but without any specific facts alleged." *Id.* at *3. Plaintiffs stated generally that a monitoring procedure existed that would make detection and treatment of Type 2 diabetes possible. *Id.* at *3. The court found that plaintiffs did not allege that there was a need for monitoring "beyond that recommended for all patients with Type 2 diabetes" and further noted that plaintiffs failed to plead facts "as to what medical monitoring procedure exists." *Id.* at *3.

On one hand, Plaintiffs need only plead a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). On the other hand, Plaintiffs must meet the applicable pleading standard by alleging sufficient factual matter to state a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, a "formulaic recitation of the elements of a cause of action" will not be sufficient to meet this standard. *McTernan v. City of York*, 564 F.3d 636, 646 (3d Cir. 2009).

Here, Plaintiffs do not even generically plead elements 5–7 of a medical monitoring claim. There is no allegation that a monitoring procedure exists to make detection of any serious latent disease possible, let alone any facts to support the claim. There is no allegation that a prescribed monitoring regime would be different from that normally recommended, let alone any facts to support the claim. Finally, there is no allegation that such a monitoring regime would be

reasonably necessary according to contemporary scientific principles, let alone any facts to support the claim. Plaintiffs merely tack "medical monitoring" onto a long list of damages. This is insufficient to state a claim for medical monitoring.

### E. Statute Of Limitations

Defendant 3M argues that Plaintiffs' claims are barred by the two-year statute of limitations because the limitations period began running when Mr. Menkes was diagnosed with bladder cancer in 2011. 3M's Mot. Dismiss 22. Plaintiffs' contend that the limitations period did not begin to run until the EPA announced the lifetime exposure limits to PFOS and PFOA in May 2016 and Plaintiffs discovered the cause of their injuries. Pls.' Mem. Law in Opp'n to Defs.' Mot. Dismiss 22–23.

In Pennsylvania, an action to recover damages for injury based on negligent or otherwise tortious conduct must commence within two years. 42 Pa. Cons. Stat. Ann. § 5524(7) (West). Federal courts should use state tolling principles when applying a state limitations period. *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991). Most tort causes of action accrue, causing the limitations period to begin to run, when the injury occurs. *Id.* However, Pennsylvania courts apply a "discovery rule," which tolls a limitations period during the time an injured party is unable, despite the exercise of due diligence, "to know of the injury *or its cause*." *Pocono Intern. Raceway Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983) (emphasis added). A plaintiff is not under an "absolute duty to discover the cause of his illness," but must exercise only the level of diligence a reasonable person would. *Cochran v. GAF Corp.*, 666 A.2d 245, 249 (Pa. 1995).

Though Mr. Menkes was diagnosed with bladder cancer in 2011, he did not ascertain the cause of such injury until more recently. Accepting Plaintiffs' allegations as true, Plaintiffs

learned of the contamination of the public water supply in May 2016, and at that time determined the cause of their injuries to have been PFOS/PFOA exposure. Therefore, Plaintiffs' Complaint is timely.

## IV.    LEAVE TO AMEND

In their Memorandum of Law in Opposition to Defendants' Motions to Dismiss, Plaintiffs request leave to amend to address any deficiencies in their Complaint.

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." Grounds that justify a denial of leave to amend include: undue delay, bad faith, dilatory motive, prejudice, and futility. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Futility means that an amended complaint will fail to state a claim for which relief could be granted under the Rule 12(b)(6) standard of sufficiency. *Id.* Therefore, where claims would not survive a Rule 12(b)(6), even as amended, a court may deny leave to amend. *Id.* at 1435.

Plaintiffs are granted leave to amend their medical monitoring claim and claims for property-related damages, but are not granted leave to amend their strict products liability claims. Because Plaintiffs were not users or consumers of AFFF, there are no additional facts they could plead which would allow them to state a claim for strict products liability. However, because additional facts might enable them to state claims for medical monitoring and property-related damages, Plaintiffs are granted leave to amend those claims.

## V.    CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are GRANTED IN PART AND DENIED IN PART. Plaintiffs are granted leave to amend their medical monitoring and property-related damages claims.